STATE OF NORTH CAROLINA v. LOUIE ALBERT McCLURE

No. 8

(Filed 14 January 1972)

**1. Criminal Law § 75— confession — intoxication of defendant**
    The trial court did not err in the denial of defendant's motion to suppress evidence of his alleged confession made on the ground that he was intoxicated and thus could not effectively waive his constitutional rights, where the court found that defendant was not under the influence of intoxicants at the time of his interrogation and such finding was supported by the evidence.

**2. Criminal Law § 23— guilty plea — defendant's failure to admit guilt**
    The trial court could properly accept defendant's plea of guilty notwithstanding defendant did not expressly admit his guilt, since defendant by his plea waived his right to a trial and authorized the court for purposes of the case to treat him as if he were guilty.

**3. Courts § 9— setting aside order of another judge**
    A judgment entered by one superior court judge may not be modified, reversed or set aside by another superior court judge.

**4. Courts § 9; Criminal Law § 23— refusal of one judge to accept guilty plea — continuance — acceptance of guilty plea by another judge**
    Where one superior court judge refused to accept defendant's plea of guilty of second degree murder and continued the case on defendant's motion when defendant stated during examination as to the voluntariness of his plea that, because of intoxication, he did not know whether or not he committed the crime, the discretionary acceptance of defendant's plea of guilty of second degree murder by another judge when the case again came on for trial was not a modification, overruling or setting aside of the judgment of the first judge, the case being before the second judge *de novo*.

APPEAL by defendant from *Martin, J.,* 1 December 1970 Session of BUNCOMBE Superior Court.

Defendant was tried under a bill of indictment charging that he "on the 5 day of June 1970 . . . unlawfully, wilfully and feloniously of his deliberate and premeditated malice aforethought, did kill and murder one Gary Evan Miller . . . . " Before trial, defendant filed a motion to suppress the evidence of an alleged confession. The matter came on before Judge Hasty, who conducted a voir dire hearing and entered an order denying defendant's motion to suppress. Defendant was arraigned, and the State elected to try him for second degree murder. Defendant, through counsel, tendered a plea of guilty of second degree murder. During Judge Hasty's inquiry into the voluntariness of the plea, defendant hestitated when the Judge

asked if he wished to plead guilty. Upon further questioning, defendant stated that, because of intoxication, he did not know whether he committed the crime or not. Judge Hasty, thereupon refused to accept the tendered plea, ordered it stricken from the record and, upon motion of defense counsel, continued the case.

The case came on for trial before Martin, J., and defendant again tendered a plea of guilty of murder in the second degree. After an extended inquiry into the voluntariness of the plea, the court found the plea to have been freely and voluntarily made, accepted the plea, and ordered it entered upon the minutes. After hearing the evidence of the State and defendant, the trial judge sentenced defendant to imprisonment for a term of not less than twenty-five years nor more than thirty years. Defendant appealed. This case is before us pursuant to our general order of referral effective 1 August 1970.

*Attorney General Morgan and Assistant Attorney General Ray for the State.*

*Gudger, Erwin and Crow, by James P. Erwin, Jr., for defendant.*

BRANCH, Justice.

[1]  Defendant assigns as error Judge Hasty's denial of the motion to suppress evidence of his alleged confession. Defendant contends that his alleged confession was involuntary because his intoxication prevented effectual waiver of his constitutional rights.

Pursuant to defendant's motion to suppress, Judge Hasty properly held a voir dire hearing and heard evidence from both the State and defendant. On voir dire defendant testified that he had been drinking heavily for three weeks prior to 5 June 1970, and that because of his intoxication he remembered nothing about the events of the night of 4 June 1970 or early morning of 5 June 1970. He specifically stated that he did not remember talking to or making admissions to deputy sheriff J. C. Laws, nor did he remember signing a waiver. He, in part, stated: "All I remember is that morning, Thursday (5 June 1970) ; that afternoon I don't know where I was. The next thing I remember is waking up on that cold steel up there in the jail on Friday."

J. C. Laws, a deputy sheriff of Buncombe County, testified that he went to the Dolson residence on the night of 5 June 1970 and observed Gary Miller with a wound in his abdomen. He further testified:

"Later on the same evening I went to the home of Mrs. Alva Brooks at 111 Edwards Avenue and there saw Louie Albert McClure. About one and a half hours later we transported Mr. McClure along with Joseph Charles Brooks to the sheriff's department. I smelled the odor of alcohol about Mr. McClure and observed that he was shakey. I advised Mr. McClure of his constitutional rights and he made a statement as follows:

"He said, 'I went to the Gary Miller home at 305 Richmond Avenue about 1:30 a.m., this date and knocked on the door and Gary Miller came to the door. I had never seen the man before. I went up there to shoot him and I did. I went back to the house and threw the gun on Joe's bed and told Joe I had shot a fellow.'

"I wrote the statement in my own handwriting and Mr. McClure looked at the statement and then signed it. He made no other statement other than shown above. In my opinion Mr. McClure was not substantially under the influence of alcohol at the time he made the statement."

Deputy Sheriffs John H. Barnes, Jr., and Phillip Anderson each testified that they saw defendant in the early morning hours of 5 June 1970, and in their respective opinions defendant was not under the influence of intoxicants.

Defendant's motion to suppress is founded solely on his intoxication at the time he allegedly made the inculpatory statements. He does not contend that the voir dire proceedings were improperly conducted.

In *State v. Logner*, 266 N.C. 238, 145 S.E. 2d 867, Justice Sharp clearly stated the rule concerning a defendant's plea of drunkenness as a bar to the admissibility of his confession, to wit:

" . . . Unless a defendant's intoxication amounts to mania—that is, unless he is so drunk as to be unconscious of the meaning of his words—his intoxication does not render inadmissible his confession of facts tending to in-

criminate him. The extent of his intoxication when the confession was made, however, is a relevant circumstance bearing upon its credibility, a question exclusively for the jury's determination."

This Court reaffirmed and adhered to the rule stated above in *State v. Logner,* 269 N.C. 550, 153 S.E. 2d 63. See also *State v. Painter,* 265 N.C. 277, 144 S.E. 2d 6, and *State v. Stephens,* 262 N.C. 45, 136 S.E. 2d 209.

Among Judge Hasty's full findings of fact was the specific finding that "On Friday morning, June 5, 1970, about 1 a.m., and thereafter until his arrest and interrogation, the defendant was not under the influence of intoxicating liquors . . . ."

There was ample evidence to support this finding and the other findings incorporated into the record. We find no error of law which may be imputed to Judge Hasty's conclusion that defendant freely, understandingly and voluntarily made the statements which he sought to suppress. *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1; *State v. Fox,* 277 N.C. 1, 175 S.E. 2d 561; *State v. Grass,* 223 N.C. 31, 25 S.E. 2d 193; *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572.

Judge Hasty ruled correctly, and his ruling could therefore have no prejudicial effect on defendant's decision to enter a plea of guilty.

Defendant next contends that Judge Martin erred when he accepted the plea of guilty of second degree murder.

[2]  We first consider whether Judge Martin properly accepted the plea in light of defendant's failure to expressly admit his guilt.

When defendant tendered his plea of guilty of second degree murder, Judge Martin carefully examined defendant concerning the voluntariness of his plea. We quote a portion of this examination, as follows:

Q. Now, you know that you are charged with second degree murder, don't you?

A. Yes sir.

Q. And you know and understand that you have a right to plead not guilty and be tried by a jury, don't you?

A. Yes sir.

Q. Now, your lawyer has said that you have instructed him to enter a plea of guilty to second degree murder. Now, I ask you how do you plead to the charge of second degree murder?

A. I plead guilty.

Q. Now, you know that on a plea of guilty to second degree murder that you could be sent to prison for as much as 30 years, don't you?

A. Yes sir.

Q. Now, has anyone, has your lawyer or the solicitor or any policeman or law officer or anyone made any promise or threat to you to influence you to plead guilty to this charge?

A. No, they haven't.

Q. Now, you have had plenty of time to talk to and work with Mr. Erwin in this case, haven't you?

A. Yes, I have.

Q. Are you satisfied with his services on your behalf?

A. Very much so.

The court then found that the plea was freely and voluntarily made, and accepted the plea as tendered.

In *North Carolina v. Alford,* 400 U.S. 25, 27 L.ed. 2d 162, 91 S.Ct. 160 (1970), defendant was indicted for murder. There was strong evidence of guilt, and upon recommendation of his counsel he tendered a plea of guilty of second degree murder, although he continued to disclaim any guilt of the crime. The trial judge heard strong damaging evidence before sentencing. The U. S. Supreme Court, in holding that the trial judge did not commit constitutional error in accepting the plea *inter alia,* stated:

> The issue in *Hudson v. United States,* 272 U.S. 451 (1926), was whether a federal court has power to impose a prison sentence after accepting a plea of nolo contendere, a plea by which a defendant does not expressly admit his

guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty. The Court held that a trial court does have such power, and, except for the cases which were rejected in Hudson, the federal courts have uniformly followed this rule, even in cases involving moral turpitude. *Bruce v. United States, supra,* at 343 n. 20, 379 F. 2d, at 120 n. 20 (dictum). See, e.g., *Lott v. United States,* 367 U.S. 421 (1961) (fraudulent evasion of income tax) ; *Sullivan v. United States,* 348 U.S. 170 (1954) (ibid.) ; *Farnsworth v. Zerbst,* 98 F. 2d 541 (CA5 1938) (espionage) ; *Pharr v. United States,* 48 F. 2d 767 (CA6 1931) (misapplication of bank funds) ; *United States v. Bagliore,* 182 F. Supp. 714 (EDNY 1960) (receiving stolen property). Implicit in the nolo contendere cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence.

These cases would be directly in point if Alford had simply insisted on his plea but refused to admit the crime. The fact that his plea was denominated a plea of guilty rather than a plea of nolo contendere is of no constitutional significance with respect to the issue now before us, for the Constitution is concerned with the practical consequences, not the formal categorizations, of state law. See *Smith v. Bennett,* 365 U.S. 708, 712 (1961) ; *Jones v. United States,* 362 U.S. 257, 266 (1960). Cf. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630-632 (1959). Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

Defendant recognizes the holding in *Alford,* but points to the fact that, in *Alford,* defendant had much to gain in that he avoided the possibility of the death sentence by pleading guilty to second degree murder, while here, defendant gained nothing

since the State had already elected to try him for second degree murder.

We do not think that this point is controlling. The true test is whether defendant's plea was voluntarily, understandingly and intelligently tendered. *N.C. v. Alford, supra; Boykin v. Alabama,* 395 U.S. 238, 23 L.ed. 2d 274, 89 S.Ct. 1709 (1969). It should be noted that in *Alford* defendant continuously denied his guilt of any crime, while in instant case defendant adopts the posture of not expressly admitting his guilt while waiving trial and authorizing the court to impose sentence.

We can only speculate as to the motives which caused defendant to plead guilty. Perhaps defendant, in light of the strong evidence against him, concluded that punishment would be milder if he avoided a hotly contested trial which would highlight an unprovoked and unnecessary killing. Further, there is the possibility that defendant recognized his guilt without being willing to publicly disclose it. The true reasons which induce an accused to plead guilty are often known only to himself, and he should be permitted, after receiving advise of counsel, to judge for himself what plea to enter. See *State v. Kaufman,* 51 Iowa 578, 2 N.W. 275 (1879). It is then the duty of the trial judge to determine whether the plea was freely, understandingly and voluntarily made.

Defendant further argues that the plea was invalid because Judge Martin reversed, modified or overruled a judgment entered by Judge Hasty when he accepted defendant's plea.

[3] It is generally recognized that "[t]he proper method for obtaining relief from legal errors is by appeal, G.S. 1-277, and not by application to another Superior Court. 'In such cases, a judgment entered by one judge of the Superior Court may not be modified, reversed or set aside by another Superior Court Judge.' *Davis v. Jenkins,* 239 N.C. 533, 80 S.E. 2d 257; *Rawls v. Mayo,* 163 N.C. 177, 79 S.E. 298." *Nowell v. Neal,* 249 N.C. 516, 107 S.E. 2d 107.

A defendant may retract his plea of guilty and plead not guilty. He may also withdraw his plea of not guilty, even after it is recorded, and plead guilty. However, in either case the retraction is not a matter of right but is addressed to the sound discretion of the trial judge. *State v. Branner,* 149 N.C. 559, 63 S.E. 169.

[4] This case was before Judge Martin *de novo,* because Judge Hasty, in the exercise of his discretion, refused to accept defendant's plea and continued the case upon defendant's motion. It was not before Judge Martin as an appeal from an order or judgment of Judge Hasty. Judge Martin's discretionary acceptance of the plea did not modify, overrule or set aside a judgment of another Superior Court judge.

This record reveals that defendant, represented by competent counsel, elected to tender a plea of guilty to the charge of second degree murder, and the able trial judge, after conducting a careful examination as to whether the plea was freely, voluntarily and understandingly made, accepted the plea. Under these circumstances, the plea should not be disturbed.

The proceedings in the trial court were free from error, and Judge Martin's judgment is

Affirmed.